# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERICK CERDA, <br><br> Plaintiff, <br><br> v. <br><br> TRACK GROUP, INC., <br><br> Defendant. | Case No.: <br><br><br> **COMPLAINT** <br><br> **JURY DEMANDED** |

Now comes the Plaintiff, ERICK CERDA, by and through his attorneys and for his Complaint against the Defendant, TRACK GROUP, INC., Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages and equitable and injunctive relief for discrimination and unlawful retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as amended, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

4. All conditions precedent to this Court's jurisdiction have occurred or have been complied with. Specifically:

    a. Plaintiff filed a Charge of Discrimination, number 440-2018-04816, with the Equal Employment Opportunity Commission ("EEOC") on April 23, 2018.

      b.      The EEOC issued a Notice of Suit Rights to Plaintiff for said charge on May 11, 2018.

## PARTIES

5.      Plaintiff is an individual who at all relevant times resided in Plainfield, Illinois.

6.      On information and belief, Defendant is a corporation of the State of Delaware, which is licensed to do business in Illinois, and whose principal place of business is located in Naperville, Illinois.

7.      Plaintiff and Defendant are both "persons" as defined in 42 U.S.C. § 2000e(a).

8.      Plaintiff and Defendant are also both "persons" as defined in 29 U.S.C. § 630(a).

9.      Defendant is an "employer" as defined in 42 U.S.C. § 2000e(b), as, on information and belief, it engaged in an industry affecting commerce and had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10.      Defendant is also an "employer" as defined in 29 U.S.C. § 630(b), as, on information and belief, it engaged in an industry affecting commerce and had 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

11.      Plaintiff is an "employee" as defined in 42 U.S.C. § 2000e(f), as he was an individual employed by an employer, the Defendant.

12.      Plaintiff is also an "employee" as defined in 29 U.S.C. § 630(f) as he was an individual employed by an employer, the Defendant.

13.      Plaintiff is a member of a legally protected class based upon his age, 47 years old.

14.      Plaintiff is also a member of a legally protected class based upon his national origin, Mexican-American.

**BACKGROUND FACTS**

15. Plaintiff began his employment with Defendant on or about November 2, 2015.

16. Plaintiff's position when first hired by Defendant was Vice President of Sales for North America.

17. Plaintiff's most recent position with Defendant was Vice President of Sales for Latin America.

18. Plaintiff performed the duties of his job to all legitimate expectations during his employment with Defendant.

19. Plaintiff was the only employee working in upper management at Defendant's Naperville, Illinois location who was of Mexican-American origin.

20. Throughout the entirety of his employment, Defendant endured verbal racial discrimination related to his national origin.

21. The discrimination endured by Plaintiff included bigoted comments as well as discriminatory actions by his supervisor, Derek Cassell ("Cassell"), and various other members of Defendant's executive team.

22. On repeated occasions, Cassell made discriminatory comments towards people of Mexican origin, such as referring to them as "spics" and making comments such as "Trump is right, build a wall and get them all out of here."

23. During or about May 2016 Plaintiff attempted to speak to a member of Defendant's Executive Management Team, Steve Hamilton ("Hamilton"), about his discriminatory behavior towards Plaintiff.

24. Hamilton had acted in a controlling and overpowering manner towards Plaintiff, but did not treat individuals who were not of Mexican-American origin in a similar manner.

25. Despite speaking with Hamilton about the problems Plaintiff had been experiencing, his working relationship with Plaintiff did not change.

26. Plaintiff brought Hamilton's behavior to the attention of Cassell after Plaintiff's conversation with him had no effect.

27. Cassell made no attempts to address the problems that Plaintiff had been experiencing with Hamilton.

28. During or about August 2016, Plaintiff again attempted to resolve the problems with Hamilton by speaking with him directly, but was unsuccessful.

29. Plaintiff again informed Cassell of the problems he had been experiencing with Hamilton.

30. However, instead of investigating or addressing Plaintiff's complaints, Cassell refused to intervene and told Plaintiff that he needed to work the problems out himself.

31. During or about December 2016 Cassell hired a younger employee, Matthew Swando ("Swando"), to take over Plaintiff's position.

32. Once Swando took over Plaintiff's position, Defendant demoted Plaintiff and reassigned him to the position of Vice-President of Sales for Latin America.

33. Plaintiff asked Cassell at this time if this change had anything to do with his work performance, to which Cassell replied that Plaintiff was doing a great job and did not need to worry.

34. On information and belief, Plaintiff was demoted because of his age and his national origin.

35. Despite being placed into Plaintiff's old position, Swando was not able to perform the job duties due to a non-compete agreement with his former employer which was still in effect.

4

36. Said non-compete agreement forbade Swando from performing any similar sales-related work in North America.

37. Due to Swando's inability to perform his job duties, Plaintiff had to continue performing his old job duties as well as the duties of his new position.

38. During or about January 2017, Defendant began to exclude Plaintiff from executive-level meetings despite the fact that he was still a member of the Executive Team.

39. Plaintiff was the only member of the Executive Team who was not invited to executive-level meetings.

40. On information and belief, Plaintiff was excluded from these meetings in favor of newer and younger employees who were not of Mexican-American origin, such as Swando.

41. During or about January 2017, Swando, Cassell, and Hamilton began to ostracize Plaintiff by refusing to speak with him.

42. These actions created an environment where Plaintiff felt he had no support from other Executive Team Members.

43. During or about this time, Swando confronted Plaintiff about his work process and ordered Plaintiff to not have any more agreements about foreign representatives without Swando's knowledge.

44. During or about February 2017, Swando began to behave in a discriminatory and hostile manner toward Plaintiff.

45. This behavior included, but was not limited to an extremely aggressive and demeaning style of communication towards Plaintiff that Swando did not employ with other employees who were younger or not of Mexican-American origin.

46. During or about late February 2017, Plaintiff reached out individually to Swando, Cassell, and Hamilton to express his concerns about the discrimination and hostility he had been facing that contributed to a hostile work environment.

47. None of Plaintiff's complaints were resolved through these conversations.

48. During or about March 2017, Cassell scheduled a meeting between Plaintiff, Swando, Cassell, and Hamilton to allegedly attempt to work through these issues.

49. The conversation ended with Plaintiff being told he needed to "find a way to deal with it."

50. During or about April 2017, Plaintiff reached out to Cassell privately to discuss his concerns about the discrimination he had endured.

51. Cassell was angered by Plaintiff's complaints and told Plaintiff that he was the one that was different.

52. During or about December 2017, Defendant made Swando the Vice-President of Sales and Marketing.

53. This change in position resulted in Plaintiff reporting directly to Swando.

54. During or about December 2017, Defendant stopped inviting Plaintiff to attend or participate in any strategic meetings with the Executive Team or Board of Directors.

55. During or about January 2018, Swando continued to create a discriminatory and hostile work environment through his denigrating communication style with Plaintiff.

56. When Plaintiff approached Cassell about the continued problems he had been experiencing with Swando, Cassell told Plaintiff that he had no time for him and that Plaintiff needed to communicate directly with Swando if he had an issue.

57. During or about this time, Plaintiff spoke to the Director of Human Resources, Norma Smith ("Smith"), who was also of Mexican-American origin, to express his ongoing concerns about the discrimination he had been enduring.

58. Plaintiff told Smith that he felt he would be terminated soon despite his important work on behalf of the company in building Defendant's sales pipeline in Latin America.

59. Smith was unable to offer a resolution to Plaintiff's complaints of discriminatory behavior.

60. Smith told Plaintiff during this time that she felt she would also be terminated soon and needed to start looking for a new position.

61. During or about February 2018, Plaintiff met with Smith again to discuss the discriminatory behavior he had been enduring.

62. Smith was again unable to offer a resolution to Plaintiff's complaints of discriminatory behavior.

63. On or about February 16, 2018, Plaintiff also reached out to Defendant's Chief Financial Officer, Peter Poli ("Poli"), to discuss how Plaintiff could best handle the discriminatory behavior.

64. Poli also had no solution or advice for Plaintiff other than to talk to others about how to approach Swando.

65. During or about February 2018, Plaintiff received a message from management congratulating him for securing a new contract in Cook County.

66. Despite this, on or about February 27, 2018, Plaintiff received a telephone call from Swando informing Plaintiff that he must either resign immediately from his position or he would be terminated.

67. Plaintiff asked for the reasoning behind the termination and the standards or metrics that had been used to evaluate his work performance, but Swando told him that the purposed of the phone call was just to give him the option of either resigning or being terminated.

68. Immediately after receiving this phone call, Plaintiff went to Human Resources, where Smith presented him with a letter of resignation.

69. Plaintiff signed the resignation letter and left that same day.

70. Plaintiff only signed the resignation letter to avoid having a termination on his employment record.

71. This is a proceeding for declaratory judgment as to Plaintiff's right of a permanent injunction restraining Defendant from maintaining a policy, practice, usage or custom of discriminating against Plaintiff because of his national origin and/or age with respect to compensation, terms conditions and/or privileges of employment, depriving Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee, because of his age. This Complaint also seeks restitution to Plaintiff for the denial of all of his rights, privileges, benefits and income that would have been received by his but for Defendant's unlawful and illegal discriminatory acts and practices.

72. Plaintiff has no plain, adequate or complete remedy at law to address the wrongs alleged herein, and this suit for injunctive relief is his only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's policy, practice, custom and usage as set forth herein, unless and until it is enjoined by the Court.

## COUNT I
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### DUE TO DISCRIMINATION

73. Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 72 above as if reiterated herein.

74. Defendant, in violation of 42 U.S.C. § 2000e, has denied and continues to deny Plaintiff an equal opportunity for employment due to his national origin, Mexican-American.

75. During Plaintiff's employment with Defendant, he was subjected to discrimination based on his national origin in that there was a double standard between the treatment of Mexican-American employees and non-Mexican-American employees.

76. The discriminatory treatment to which Plaintiff was subjected includes, but is not limited to, the instances alleged above. All of the actions of the individuals described herein were undertaken in their capacities as the employees, agents and/or authorized representatives of Defendant.

77. Defendant, through its employees, agents and/or authorized representatives, knew that its termination and discriminatory treatment of Plaintiff because of his national origin violated Title VII.

## COUNT II
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### DUE TO RETALIATION

78. Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 77 above as if reiterated herein.

79. Defendant, in violation of 42 U.S.C. § 2000e, has denied and continues to deny Plaintiff an equal opportunity in retaliation for expressing concern over the discrimination he was facing and for demanding changes for the discriminatory behavior directed towards him.

80. During Plaintiff's employment with Defendant and when Plaintiff was terminated by Defendant, he was subjected to discrimination and retaliation for engaging in a legally-protected activity, as set forth above.

81. The retaliatory treatment to which Plaintiff was subjected includes, but is not limited to, the instances alleged above. All of the actions of the individuals described herein were undertaken in their capacities as the employees, agents and/or authorized representatives of Defendant.

82. Defendant, through its employees, agents and/or authorized representatives, knew that its retaliation, termination and discriminatory treatment of Plaintiff because of his expressing concern over the discrimination he was facing and for demanding changes for the discriminatory behavior directed towards him violated Title VII.

## COUNT III
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## DUE TO DISCRIMINATION

83. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 82 above as if fully reiterated herein.

84. Defendant, in violation of the provisions of 29 U.S.C. § 623, has denied and continues to deny Plaintiff an equal opportunity because of his age.

85. During Plaintiff's employment with Defendant, he was subjected to age discrimination in that there was a double standard between older employees and younger employees who were not included within the protected age class. Plaintiff's younger counterparts were not subjected to the discriminatory treatment to which Plaintiff was subjected.

86. Defendant, through its employees, agents and/or authorized representatives, knew that its discriminatory treatment of Plaintiff because of his age violated the ADEA.

## COUNT IV
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## DUE TO RETALIATION

87. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 86 above as if fully reiterated herein.

88. Defendant, in violation of the provisions of 29 U.S.C. § 623, has denied and continues to deny Plaintiff an equal opportunity because of his age.

89. During Plaintiff's employment with Defendant, he was subjected to age discrimination in that there was a double standard between older employees and younger employees who were not included within the protected age class. Plaintiff's younger counterparts were not subjected to the retaliatory treatment to which Plaintiff was subjected.

90. Defendant, through its employees, agents and/or authorized representatives, knew that its retaliatory treatment of Plaintiff because of his age violated the ADEA.

Wherefore, Plaintiff ERICK CERDA, respectfully prays this Honorable Court enter judgment against Defendant, TRACK GROUP, INC., as follows:

    a. Declaring the Defendant's practices complained of herein unlawful and in violation of Title VII as well as the ADEA;

    b. Permanently enjoining Defendant, its agents, successors, officers, employees, representatives, attorneys and those acting in concert with it or them from engaging in the unlawful practices, policies, customs and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

    c. Ordering modification or elimination of the practices, policies, customs and usages set forth herein and all other such practices shown to be in violation

of applicable law, ensuring Defendant will not continue to discriminate on the basis of national origin or age;

d. Immediately assigning Plaintiff to the position he would now be occupying but for the discriminatory and retaliatory practices of Defendant, and adjusting the wage rates, salaries, bonuses and benefits for Plaintiff to those which he would have received but for the discriminatory practices of Defendant, or awarding Plaintiff front-end and future pay;

e. Compensating and making Plaintiff whole for all earnings, wages, bonuses and other benefits that Plaintiff would have received but for the discriminatory practices of Defendant;

f. Compensating and making Plaintiff whole for all other damages Plaintiff incurred as a result of the discriminatory practices of Defendant;

g. Awarding Plaintiff all witness fees, court costs and other litigation costs incurred in this Action, including reasonable attorneys' fees; and

h. Awarding Plaintiff liquidated and/or punitive damages for Defendant's willful conduct, and granting such other relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECTFULLY SUBMITTED,

ERICK CERDA

By: /s/ David B. Levin
Attorney for Plaintiff
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, IL 60062
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com